# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

ROBERT E. BODELL, II,            )
                                 )
            Plaintiff,           )
                                 )
v.                               )     Case No. CIV-17-427-KEW
                                 )
COMMISSIONER OF THE SOCIAL       )
SECURITY ADMINISTRATION,         )
                                 )
            Defendant.           )

**OPINION AND ORDER**

Plaintiff Robert E. Bodell, II (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 45 years old at the time of the ALJ's decision. Claimant obtained his GED. Claimant has worked in the past as a laborer, stocker, HVAC installer, and cab driver. Claimant alleges an inability to work beginning November 28, 2014 due to limitations resulting from diverticulitis, peritonitis, colon resection, bacterial cyst, and an open abdominal wound.

### Procedural History

On February 17, 2015, Claimant protectively filed for

protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On July 19, 2016, Administrative Law Judge ("ALJ") Elizabeth Dunlap conducted an administrative hearing by video with Claimant appearing in Paris, Texas and the ALJ presiding from Dallas, Texas. On May 2, 2017, the ALJ entered an unfavorable decision. The Appeals Council denied review on September 14, 2017. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made her decision at step five of the sequential evaluation. She determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform sedentary work with limitations.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to properly consider, evaluate, and weigh the medical evidence; (2)

failing to adequately account for all of Claimant's impairments in the hypothetical questioning of the vocational expert and in the RFC; and (3) failing to properly consider and account for Claimant's obesity.

**Consideration of the Medical Evidence of Record**

In her decision, the ALJ found Claimant suffered from the severe impairments of a history of peritonitis, inflammatory bowel disease, atrial fibrillation, diabetes mellitus type II, and obesity. (Tr. 37). The ALJ determined Claimant retained the RFC to perform sedentary work except he could not climb ladders, work at heights, operate vehicles or moving machinery, and work in a setting where a fall would risk serious injury. The ALJ found that Claimant must work in a clean, climate-controlled environment. (Tr. 39).

After consultation with a vocational expert, the ALJ determined Claimant could perform the representative jobs of eyeglass packager, semi-conductor loader, and film inspector, all of which the ALJ found existed in sufficient numbers in the regional and national economies. (Tr. 45). As a result, the ALJ concluded that Claimant was not under a disability from November 28, 2014 through the date of the decision. (Tr. 46).

Claimant contends the ALJ failed to consider a litany of

medical conditions which she asserts constitute additional impairments - either severe or non-severe but all of which allegedly should have been considered by the ALJ in the RFC. These diagnosed conditions include depression, night terrors, insomnia, fatigue, "postoperative wound infection, NEC", non-healing surgical wound, "non-healing surgical wound which is healing", abdominal pain, hernia, hypertension, precordial chest pain, irregular cardiac rhythm, chest pain, cardiomegaly, chronic low back pain, suprapateller effusion of the right knee, neck pain, and shoulder pain. *Cl. Brief* at p. 5.

With regard to Claimant's depression, the ALJ found that he did not have a medically determinable mental impairment. She gave "great weight" to the opinion of the state agency psychological consultant, Dr. Joy Kelley. (Tr. 38). On October 13, 2015, Dr. Kelley concluded that Claimant had "[n]o mental medically determinable impairments established." (Tr. 121). She noted that Dr. Victoria Pardue found Claimant showed positive for anxiety and depression, negative for crying spells, appropriate affect and demeanor, and normal speech pattern. Under activities of daily living, Claimant prepared simple meals, did laundry without encouragement, could pay bills and count change, had no problems getting along with others, could follow directions, and handled stress well. Under "analysis of evidence," Dr. Kelley found

Claimant "retains the capacity to perform work-related mental activities consistent with the PRT provided based on the MER and ADL findings." (Tr. 122). Indeed, the objective medical record as a whole repeatedly shows normal psychological findings. (Tr. 729, 731, 733, 738, 740, 742, 744-45, 747).

In order for a condition to constitute a "medically determinable impairment," it "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521. An impairment must be shown by objective medical evidence including "[p]sychiatric signs" which are "medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception, and must also be shown by observable facts that can be medically described and evaluated." 20 C.F.R. § 404.1502(f). The ALJ was correct in finding that Claimant did not meet this criteria for a medically determinable mental impairment, given the objective medical findings on his mental condition.

As for the list of other conditions Claimant provides in the briefing, many are variations on the same condition which are simply stated differently in the medical record. As an initial matter, the focus of a disability determination is on the functional

7

consequences of a condition, not the mere diagnosis. See e.g. Coleman v. Chater, 58 F.3d 577, 579 (10th Cir. 1995)(the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment.); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988)(the mere diagnosis of arthritis says nothing about the severity of the condition), Madrid v. Astrue, 243 Fed.Appx. 387, 392 (10th Cir. 2007)(the diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work); Scull v. Apfel, 221 F.3d 1352 (10th Cir. 2000)(unpublished), 2000 WL 1028250, 1 (disability determinations turn on the functional consequences, not the causes of a claimant's condition). The fact Claimant was diagnosed with a number of conditions does not translate into medically determinable impairments. Other than identifying the conditions, Claimant in no way demonstrated that they significantly limited Claimant's ability to work.

To the extent Claimant contends the listed conditions should have been included at step two, Where an ALJ finds at least one "severe" impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard

to whether any such impairment, if considered separately, would be of sufficient severity.  Brescia v. Astrue, 287 F. App'x 626, 628-629 (10th Cir. 2008).  The failure to find that additional impairments are also severe is not cause for reversal so long as the ALJ, in determining Claimant's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'" Id. quoting Hill v. Astrue, 289 F. App'x. 289, 291-292, (10th Cir. 2008).

Moreover, the burden of showing a severe impairment is "de minimis," yet "the mere presence of a condition is not sufficient to make a step-two [severity] showing." Flaherty v. Astrue, 515 F.3d 1067, 1070-71 (10th Cir. 2007) quoting Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir. 2003); Soc. Sec. R. 85-28.  At step two, Claimant bears the burden of showing the existence of an impairment or combination of impairments which "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c).  An impairment which warrants disability benefits is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D). The severity determination for an alleged impairment is based on medical evidence alone and "does not include consideration of such factors as age, education, and work

experience." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In this case, the ALJ did not end the sequential evaluation at step two by finding Claimant had no severe impairments. Many of the conditions were discussed by the ALJ - including the wound infection which encompasses many of Claimant's alleged conditions. (Tr. 44). Since she did not deny benefits at step two based upon the lack of any severe impairments, the ALJ's failure to include these conditions does not constitute reversible error.

Claimant also asserts that the ALJ erred in her consideration of the opinion of Dr. Victoria Pardue, a treating physician. Dr. Pardue completed a medical source statement dated November 12, 2015. She found Claimant could occasionally lift/carry up to ten pounds; could sit for one hour at a time and for four hours in an eight hour workday; could stand for 30 minutes at a time and for two hours in an eight hour workday; could walk for ten minutes at a time and for one hour in an eight hour workday; did not require a cane; could occasionally reach, including overhead, bilaterally; could frequently handle, finger, and feel bilaterally; and could occasionally push/pull with the upper extremities. He could also operate foot controls bilaterally. (Tr. 1187-89). Dr. Pardue also estimated Claimant could occasionally climb stairs and ramps but never climb ladders and scaffolds, balance, stoop, kneel, crouch,

10

or crawl. Claimant's hearing was normal but he required glasses for vision. (Tr. 1190). Claimant could never work in unprotected heights, around moving machinery parts, around dust, odors, fumes and pulmonary irritants, extreme cold or heat. He could occasionally work in humidity and wetness or vibrations and he could work around moderate noise, such as in an office. He could frequently operate a motor vehicle. (Tr. 1191). As far as activities, Dr. Pardue found Claimant could shop, travel without a companion, ambulate without an assistive device, use public transportation, climb a few steps at a reasonable pace, prepare a simple meal and feed himself, care for his personal hygiene, and sort, handle, and use paper/files. (Tr. 1192).

On the same day, Dr. Pardue authored a Cardiac Medical Source Statement. She diagnosed Claimant with atrial fibrillation and unstable angina. Dr. Pardue found the angina episodes occurred daily and required Claimant to rest for one hour after the episode. (Tr. 1182). She determined Claimant was capable of low stress work. She found Claimant's condition contributed to emotional difficulties which contribute to the severity of Claimant's functional limitations. Dr. Pardue found Claimant could walk without rest for less than one block and he could sit and stand/walk for less than two hours in an eight hour workday. She

11

also determined Claimant would be required to shift positions at will from sitting, standing, and walking and he would need to take unscheduled breaks every hour for 15-20 minutes. (Tr. 1182-83). She also found Claimant would have to spend 90% of an eight hour workday with his legs elevated above his heart. He also could "rarely" lift/carry up to ten pounds and could never twist, stoop, crouch/squat, or climb ladders. He could rarely climb stairs. (Tr. 1184). Claimant would also be "off task" for 25% of the day or more and would require to be absent from work for more than four days per month. She also noted Claimant must wear glasses. (Tr. 1185).

The ALJ gave Dr. Pardue's first opinion "great weight" due to her extended treatment record of Claimant. (Tr. 43). The second opinion, however, was given "no weight" as conflicting with the first and because Dr. Pardue "provided no cogent rationale for such extreme limitations, leaving her stated opinion unsupported." (Tr. 43-44). The cited conflicts included the ability to sit restrictions and the elevation requirement, stoop restriction, and the absence from work estimation. Id.

A treating physician's opinion must still be supported by objective evidence. "It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it

is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) citing Soc. Sec. R. 96-2p, 1996 WL 374188, at *2; see also 20 C.F.R. § 404.1527(d)(2). In this instance, Dr. Pardue's first opinion was supported by her treatment records and by subsequently reviewing medical sources. The opinion reflected in the cardiac source statement are not supported in the record. For example, her requirement for Claimant to elevate his feet above his heart level for 90% of the day due to swelling and shortness of breath is belied by the fact that Claimant denied leg swelling in the treatment records and Dr. Pardue never instructed Claimant to elevate his legs for 90% of his day. (Tr. 610, 1368, 1372, 1380). The ALJ's weighing of Dr. Pardue's source statements is well-supported by the remainder of the medical record.

Claimant again identifies a number of conditions which appear in Dr. Pardue's treatment notes and asserts they should be considered impairments. The same analysis of these conditions previously set forth in this Opinion and Order applies to these conditions. Claimant has failed to demonstrate that they constitute a medically determinable impairment under the

13

regulations.

## Step Five Analysis

Claimant contends the additional impairments should have been included as restrictions in the RFC and the hypothetical questioning of the vocational expert. As discussed, the RFC is supported by the objective medical record.

Claimant next asserts that the ALJ's finding that he could perform the job of semi-conductor loader is contradicted by the fact that the job requires occasional exposure to toxic or caustic chemicals and the ALJ limited Claimant to a "clean climate-controlled environment." DOT #726.687-030; (Tr. 39). In the hypothetical questioning of the vocational expert, the ALJ limited Claimant to working "in a clean environment free of fumes, dust, odors and pulmonary irritants and a climate controlled environment free of extremes of heat and cold." (Tr. 78). While this Court understands the Commissioner's argument regarding the definition of environmental factors under the Selected Characteristics of Occupations ("SCO"), the ALJ's restrictions do appear to encompass the exposure potential of the semi-conductor loader job. However, even if this job is eliminated, the jobs of eyeglass packager and film inspector remain. Identification of any jobs which Claimant could perform under the RFC satisfies the step five requirements.

*See* Nunn v. Apfel, 149 F.3d 1191, 1998 WL 321189, *2 (10th Cir. 1998)(Even assuming that claimant's objections to some of the jobs identified by the vocational expert are well taken, if claimant can perform some of the jobs identified, the ALJ can rely on those jobs to find claimant not disabled).

On the remaining jobs, Claimant attempts to argue that they exist in insufficient numbers at 132,000 nationally. The Tenth Circuit has established that "[t]his Circuit has never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number' and rejects the opportunity to do so here." Trimiar v. Sullivan, 966 F.2d 1326, 1330 (10th Cir. 1992). Rather, an ALJ's conclusion that the number of jobs a claimant can do exist in significant numbers is sufficient if the record supports a conclusion that the ALJ used a common sense approach in "weighing the statutory language as applied to a particular claimant's factual situation." Johnson v. Colvin, 2014 WL 4215557, 3 (W.D. Okla.). Given the imprecise nature of this analysis, this Court is unwilling to find that 110,000 (eyeglass packager) and 22,000 (film inspector) represent an insignificant number of jobs. *See*, Rogers v. Astrue, 2009 WL 368386, 4 (10th Cir.)(testimony by vocational expert of 11,000 hand packager jobs in the national economy could be relied upon by the ALJ as substantial evidence to support a finding of non-

15

disability). Since at least one job exists in sufficient numbers which is not in conflict with the DOT, the ALJ had substantial evidence to support his step five determination.

### Obesity

Claimant contends the ALJ failed to properly consider and account for her obesity, which was determined to be a severe impairment. An ALJ is required to consider "any additional and cumulative effects" obesity may have upon other conditions from which a claimant suffers, recognizing that obesity combined with other impairments may increase the severity of the condition. Soc. Sec. R. 02-1p; 20 C.F.R. Pt. 405, Subpt. P, App. 1 § 1.00(Q)(combined effect with musculoskeletal impairments).

At step three, "a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing." Soc. Sec. R. 02-1p. "[O]besity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments." Id. "Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." Each case is evaluated on information in the case record. Id. However,

speculation upon the effect of obesity is discouraged.[2] *See*, <u>Fagan v. Astrue</u>, 2007 WL 1895596, 2 (10th Cir.).

The ALJ specifically set forth that she considered the effects of obesity, including the combined effects of obesity upon her other impairments at all steps of the evaluation pursuant to Soc. Sec. R. 02-1p. (Tr. 38). Moreover, Claimant does not present evidence of any functional limitations which would stem from Claimant's obesity. He did not testify as to any limitations which he experiences as a result of his obesity. The diagnosis of the condition does not automatically translate into functional limitations. Therefore, "the factual record does not support [Claimant's] position that [his] obesity, either alone or in combination with other conditions, precludes [him] from performing [sedentary] work." <u>Rose v. Colvin</u>, 634 F. App'x 632, 637 (10th Cir. 2015) quoting <u>Howard v. Barnhart</u>, 379 F.3d 945, 947 (10th Cir. 2004). The ALJ did not err in her consideration of Claimant's obesity.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore,

---

[2] "[W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments." Soc. Sec. R. 02-01p.

this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 19th day of March, 2019.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE